BARR v. PATRICK.

1. **Vendor and Vendee:** CONVEYANCE: LIEN. Where a conveyance
expressly provided for the payment by the vendee, as a part of the con-
sideration, of a judgment which was a lien upon the property, and
excepted such judgment from the covenants of warranty, it was held
that the land was charged with the payment of the judgment in the
hands of any one claiming through such conveyance, and that the
grantee of other lands of the judgment debtor upon which the judgment
was a lien, who was compelled to pay such judgment to protect his lands,
was entitled to enforce the same against the land specially charged with
its payment.

2. ——: ——: ADJUDICATION. A decision adverse to such grantee, in an
action brought by him to compel the holder of the judgment to resort
in the first instance to the land specially charged, would not be an adju-
dication of his rights as between him and the owner of such land, who
was not a party.

*Appeal from Buchanan Circuit Court.*

MONDAY, DECEMBER 15.

ON the 15th day of December, 1866, Hugh Barr, and Mary
Barr his wife, confessed a judgment in favor of E. W. Purdy
in the Buchanan District Court, for the sum of six hundred
dollars. Hugh Barr was at that time the owner of 120 acres
of land in section 20, township 88, range 9 west, upon which
as well as other lands owned by him the said judgment was a
lien. On the 31st day of August, 1867, said Barr and wife
conveyed the 120 acre tract to John L. Hallett. The deed of
conveyance contained the usual covenants of warranty, subject
to an exception in these words: "Subject to a judgment of
six hundred dollars executed to E. W. Purdy, which said
Hallett is to pay of said judgment, entered in clerk's office of .
Buchanan county, Iowa.

On the 8th day of September, 1868, Hallett conveyed the
120 acres, with other lands, to D. C. Brooks. The deed con-
tained covenants of general warranty with the following excep-
tion: "Subject to a mortgage of $1,200, given by H Barr to
Hallett Aug. 31, 1867, and subject to a judgment of $700
given to *E. W. Ran* Dec. 15, 1866. On the same day Brooks
executed a mortgage upon the land to O. M. Pond to secure

the payment of $1,000. On the 3d day of August, 1871, Pond assigned his mortgage to C. L. Patrick, defendant herein. Before the assignment Pond released all of the land from the mortgage excepting the 120 acres. Patrick foreclosed the mortgage, and on the 21st day of March, 1874, he purchased the land at the foreclosure sale for the full amount of the judgment, interest and costs. He took a certificate of sale, and on the 30th day of March, 1875, the sheriff executed and delivered to him a deed for the said land.

On the 24th day of December, 1869, there was paid on the Purdy judgment the sum of $100 and interest in full to January 1, 1870, and a stay of execution was granted on the remaining $500 to January 1, 1871. On the 28th day of August, 1871, Purdy assigned his judgment to one Edwin Woods. Execution was issued upon the judgment, and a levy was made upon the lands which were owned by Hugh Barr, other than the 120 acres in controversy. These other lands had been sold and conveyed by Hugh Barr to Thomas Barr, the plaintiff herein. Thomas Barr commenced an action and obtained an injunction to compel the sheriff and Woods to release the levy, and sell the 120 acre tract. The injunction was dissolved, and the plaintiff on the 28th day of March, 1874, paid to the sheriff, for Hugh Barr, the full amount of the judgment, interest and costs, to-wit: the sum of $720.53.

Plaintiff claims that the judgment paid by him was a prior lien, upon the 120 acres of land, to the mortgage executed by Brooks to Pond, and assigned to the defendant, and asks that he be subrogated to the rights and benefits of the contract in the deed from Hugh Barr to Hallett, and that said 120 acres be ordered to be sold to pay the amount paid by him to discharge said judgment, and also for certain taxes paid by plaintiff in redemption of the land from tax sale.

The defendant denied that the plaintiff had any right to a lien upon said land, and set up the dissolution of the injunction as an adjudication of any supposed right which the plaintiff had to be subrogated to the rights of Hugh Barr. He also interposed a tax title which he claimed to hold upon said land, as a defense to any claim the plaintiff might have.

There was a trial upon written evidence, and a decree was entered that the plaintiff be substituted to the rights of Hugh Barr and Edwin Woods to maintain suit against John L. Hallett and others liable, as may be shown, and the bill was dismissed as to the defendant Patrick. Plaintiff appeals.

*C. E. Ransier*, *H. W. Holman* and *Boies & Couch*, for appellant.

*Lake & Harmon*, for appellee.

ROTHROCK, J.—I. The foregoing statement has been made with no little difficulty. The facts are complicated, and they

1. VENDOR and vendee: conveyance: lien.

are made more so by numerous mistakes, clerical and otherwise, in appellant's abstract. There not being an entire agreement between the parties as to the correctness of the abstracts, we have made our statement largely from the transcript. Before proceeding to an examination of the rights of the parties, we may observe that upon the oral argument counsel for appellee withdrew all claim by reason of his alleged taxtitle. That defense is, therefore, out of the case.

When Hugh Barr sold and conveyed the land in controversy to Hallett, the Purdy judgment was regarded by the parties as part of the purchase money, and by the acceptance of the deed there was an express undertaking upon the part of Hallett, that he would pay the judgment. The same may be said of the deed from Hallett to Brooks. It is true the judgment is not so explicitly described, but it is sufficiently referred to to indicate that there is a judgment, which was rendered upon the 15th day of December, 1866. The fact that there appears to be a mistake in the name of Purdy, and the the name *Ran* is used instead, is, we think, a matter of no consequence. It does not appear that there was any other judgment of that date which was a lien upon the land, and an examination of the records, for the true consideration of the title would necessarily disclose to the examiner that the Purdy judgment was intended. That Brooks understood what judgment was intended is evident from the fact that while he was the owner of

the land and liable for the payment of the judgment, $100 was paid thereon by him as testified to by Purdy, and the record shows this payment was made on the 24th day of December, 1869. Hugh Barr had the right to enforce the payment of this judgment as against Hallett, and also as against Brooks, by subjecting the land to its payment. As between him and Hallett the judgment was charged specifically upon the land, so that if Barr had paid it he could have enforced it against the land. Of this Brooks was charged with notice, and took the land subject to the same condition and charged with the same burden, because he derived title through the deed from Barr to Hallett. For the same reason, the mortgage to Pond was subject to the judgment, and when Patrick purchased the mortgage, and foreclosed and bid in the property, he did so subject to the judgment. He must be presumed to have bid that much less. It was Hugh Barr's right all the while, in case he was forced to pay, to have the claim made out of the land, because he expressly reserved and provided for such payment to be made, by his grantee, and out of the purchase money. Having made this provision in his deed to Hallett, it affected all the other parties claiming through said deed. In this view it is immaterial whether the deed from Hallett to Brooks correctly or mistakenly described the judgment. Where one who is liable for a mortgage conveys the land subject to the payment thereof by his grantee, he is entitled, upon paying the debt himself, to be subrogated and enforce the mortgage. *Halsey v. Reed*, 9 Page, 446; *Ferris v. Crawford*, 2 Denio, 595. The same rule must apply when a conveyance is made subject to the payment of a judgment lien, by the grantee. Thomas Barr, the plaintiff, paid the judgment because, as the grantee of the other lands, he was compelled to do so for his own protection, and in equity he is entitled to be subrogated to all the rights of Hugh Barr. It is urged by counsel for appellee that Thomas Barr paid the judgment, and it was canceled of record more than a year before defendant took the title to the land by the sheriff's deed, and the lien of the judgment was extinguished. That fact, we think, is immaterial. The defendant purchased the land at the

foreclosure sale on the 21st day of March, 1874, and plaintiff paid the judgment on the 28th of the same month. But we think the rights and obligations of the parties would not be different if the judgment had been paid after the sheriff's sale, because Thomas Barr was obliged to protect himself, and he immediately, upon payment being made, acquired the right of subrogation. In conclusion upon this point we may say that the equities of the plaintiff are stronger, because it appears that defendant had actual notice of the judgment, and as the agent of Woods purchased it from Purdy.

II. In our opinion the rights of the plaintiff were not adjudicated by the dissolution of the injunction. Patrick was 2. ___: ___: not a party to the action, and he stands in an enadjudication. tirely different position from Woods, the assignee of the Purdy judgment. Woods could not properly be enjoined, and put to the expense of another levy, unless it was made to appear that he committed a wrong in levying upon the land of the plaintiff. It was his right (especially in the absence of any actual knowledge of the specific charges upon the land in controversy) to levy upon any land upon which the judgment was a lien. Woods was entitled to collect his judgment by the ordinary process of the law, and could not be compelled to litigate questions which were of no concern to him, but which could only be determined in an action between the parties hereto.

The plaintiff is entitled to a decree subjecting the land to the payment of the amount paid by him upon the judgment, and interest thereon at six per cent from the time such payment was made, and to this amount should be added $126.49 paid by the plaintiff in redemption of the land from a tax sale, and interest at six per cent thereon from September 3d, 1875, the time at which said redemption was made. The defendant purchased the land at tax sale, and was the holder of the certificate of purchase, and the money paid in redemption was paid directly to his use. The cause will be reversed and remanded for a decree in the court below in accord with this opinion, or a decree will be entered in this court at the option of the appellant.

                                                          REVERSED.